<u>Not For Publication</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| CARLOS A. DAVILA, | : | |
| | : | Civil Action No. 04-1391 (FSH) |
| Plaintiff, | : | |
| | : | **OPINION** |
| vs. | : | |
| | : | June 14, 2005 |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

_____

<u>HOCHBERG, District Judge</u>

This matter is before the Court upon Plaintiff's motion to review a final determination of the Administrative Law Judge (ALJ), pursuant to 42 U.S.C. § 1383(c)(3).  The motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.      Factual and Procedural Background**

On July 19, 2002, Plaintiff Carlos A. Davila requested Social Security Disability benefits, pursuant to the Social Security Act (the Act), alleging he was disabled because of bone disease, failing eyes, hip replacement and pain in his knees, hands and feet.  Plaintiff was eligible to receive benefits between July 16, 1983 when he stopped working and December 31, 1988.[1]  For his claim to be successful Plaintiff must demonstrate that he was disabled as defined by the Act for at least twelve months between July 16, 1983 and December 31, 1988.

_____

[1] Claimant meets the nondisability requirements of Section 216(i) of the Act but his insurance coverage only runs through December 31, 1988.

Plaintiff's claim was denied, in a September 3, 2002 letter, by the Social Security Administration. After his claim was denied again on reconsideration, Plaintiff, on January 30, 2003, sought a hearing which was held on June 16, 2003 before ALJ Ralph J. Muehlig. The ALJ denied Plaintiff's claim on July 14, 2003, finding: (1) that he was insured through December 31, 1988; (2) that he had not engaged in substantial gainful activity since the alleged onset of disability on July 16, 1983; (3) that as of December 31, 1988 Plaintiff had a severe impairment; (4) that the impairment, however, did not equal the elements of a listed impairment; (5) that as of December 31, 1988, Plaintiff was not disabled because he retained his residual functional capacity to perform his former job. Plaintiff's request for review of the ALJ's determination was denied by the Social Security Administration's Appeals Council on February 9, 2004. Plaintiff filed a complaint on March 19, 2004 commencing this action.

Plaintiff, a sixty-three year old male who completed two years of college, worked as a diamond setter supervisor from 1963 to 1983. His work required him to place diamonds into ring settings and supervise eighteen other workers. During his work day Plaintiff would, typically, sit for six hours, walk for two and stand for one. He was not required to do any regular lifting and carrying and never had to lift items in excess of ten pounds.

Plaintiff has a long medical history that was reviewed by the ALJ.[2] Plaintiff was dialysis dependent between 1974 and 1978. In September 1978 he underwent an elective renal transplant.

_____

[2] In addition to the ailments listed, Plaintiff was also anemic between 1974 and 1978, with various complications including acute pericarditis, myocardial infarction, pulmonary edema, hypercalacemia with asceptic necrosis of the heads of both femurs. A parathyroidectomy was performed in February of 1978 due to Plaintiff being diagnosed with parathyroidism (hyperparathyroidism).

The renal transplant was successful.  After the transplant Plaintiff returned to work as a diamond setter and remained in that position until July 16, 1983.   In July 1978 Plaintiff underwent a right hip replacement.

Plaintiff testified at his hearing that he left his job in 1983 because of decreasing vision and pain in his bones.  Soon thereafter he left for Ecuador where he lived for approximately twenty years, returning to the United States periodically for medical reasons.  Plaintiff further testified that his vision has gotten progressively worse since 1983.  He presented medical reports from Dr. Nelson E. Escorza Vargas, his doctor in Ecuador, dated December 7, 1983, September 1, 1984, August 3, 1985, July 10, 1987 and May 3, 1988 all stating he had pain in his right leg resulting in a limp and his vision was impaired.  Plaintiff's U.S.-based doctor examined him on June 20, 1985 recommending regular exercise and thirty minute walks five days a week to combat a slight elevation in Plaintiff's cholesterol.  On a return visit to the United States, Plaintiff  was examined on June 18, 1986 and the notes of the visit state that Plaintiff was feeling "terrific" and experiencing no bone pain.

Plaintiff had continuing problems with his artificial hip requiring multiple doctor visits. Plaintiff visited Dr. Eduardo Alcivar Andretta, in Ecuador, on February 24, 1997 and was admitted due to dislocation of his prosthesis.[3] On September 16, 1998, while in Ecuador, X-rays revealed that Plaintiff's artificial hip had loosened and the hip was again replaced on October 15, 1998.[4]  Plaintiff's doctor in the U.S., Dr. Michael Gutkin, examined Plaintiff on February 14,

---

[3] Plaintiff was discharged on February 26 after treatment by cutaneous traction.

[4] Plaintiff was hospitalized for eight days, and continued with treatment and physiotherapy until December 15, 1998.  On that date Plaintiff presented flexion of 75 degrees of his hip and was able to walk with use of a cane.

3

2003.  Dr. Gutkin stated that Plaintiff had been continuously, at least since before the kidney

transplant, disabled because of severe bone disease and his artificial right hip. Dr. Gutkin opined

that Plaintiff was incapable of walking more than a short distance and stated that  Plaintiff still

had a limp due in part, in Dr. Gutkin's opinion, to his right leg being shorter than his left leg.

A state medical consultant, Dr. Burton Levine, conducting a residual functional capacity

assessment dated August 21, 2002 offered that Plaintiff could lift and carry up to twenty pounds

occasionally and ten pounds frequently.  Also, Plaintiff was capable of sitting for six hours,

standing and/or walking for two hours in an eight hour day, and could push or pull without

limitation.  Dr. Levine also found that while Plaintiff could not crouch, crawl, climb ladders,

ropes, scaffolds, and should avoid concentrated exposures to hazards and machinery, Plaintiff had

no other limitations.  A reviewing state medical expert concurred with this opinion.

## II.       Standard for Finding of Disability

An individual may be entitled to Social Security Benefits upon a finding of disability

demonstrating that he is unable to "engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  A disabling impairment is defined as "an

impairment that results from anatomical, physiological or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

§§ 423(d)(3) and 1382c(a)(3)(D).  An individual will be deemed to be disabled only if the

impairment is so severe that he is not only unable to do his previous work, but cannot, considering

4

his "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner of Social Security ("Commissioner") uses the following five-step analysis to determine whether an individual is disabled:

Substantial Gainful Activity.  The Commissioner first considers whether the individual is currently engaged in substantial gainful activity.  If there is such activity, the individual will be found not disabled without consideration of his medical condition. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

Severe Impairment.  If there is no substantial gainful activity, Plaintiff must then demonstrate that he suffers from a severe impairment or combination of impairments that significantly limits his ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c)) and 416.920(c)).

Listed Impairment.  If Plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. § 404, Subpart P or is equal to a Listed Impairment.  If the individual has such an impairment, the Commissioner will find the individual disabled.

Past Work.  If the individual does not have a listed impairment, the fourth step is to determine whether, despite his impairment, the individual has the residual functional capacity to perform his past relevant work.  Residual functional capacity is defined as what the claimant can still do despite his limitations.  20 C.F.R. §§ 404.1545(a) and 416.945(a).  If he does have the capacity to perform past work, the individual will be found not disabled. 20 C.F.R.  §§ 404.1520(f) and 416.920(f).

5

Other Work.  Finally, if the individual is unable to perform work done in the past, the Commissioner then considers the individual's residual functional capacity, age, education, and past work experience to determine if he can do any other work.  If he cannot perform other work, the individual will be found disabled. 20 C.F.R. §§404.1520(g) and 416.920(g).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof.  *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of production and persuasion through the first four steps; however, if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the individual is capable of performing gainful employment other than the claimant's past relevant work and that jobs which the plaintiff can perform exist in substantial numbers in the national economy.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).   If there is a finding of disability or non-disability at any point during the review, the Commissioner will not review the claim further.  20 C.F.R. §§ 404.1520(a) and 416.920(a).

**III.    Standard of Review**

In accordance with 42 U.S.C. § 405(g), this Court must review the factual findings of the ALJ to determine whether the administrative record contains substantial evidence for such findings.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  A decision concerning disability benefits must be upheld by the Court if an examination of the record reveals substantial evidence supporting the ALJ's conclusion. 42 U.S.C. § 405(g).  Substantial evidence is more than a mere scintilla of evidence; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Where evidence in the record is susceptible to more than one rational interpretation, the Court must endorse the Commissioner's conclusion.  *Alexander v. Shalala*, 927 F. Supp. 785, 791 (D.N.J. 1995), *aff'd*, 85 F.3d 611 (3d Cir. 1996) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  "The ALJ's responsibility is to analyze all evidence and to provide adequate explanations when disregarding portions of it."  *Snee v. Sec'y of Health and Human Servs.*, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolski v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Mathews*, 574 F.2d 772, 776 (3d Cir. 1978).

**IV.    Analysis**

In reaching the determination that Plaintiff was not entitled to disability benefits, the ALJ concluded that Plaintiff, while he had suffered a severe impairment, was able to perform his former job during the period in question and therefore was not disabled under the Act.  The ALJ's determination was supported by substantial evidence, including all relevant medical information, and therefore is in accord with the law.

Under step one of the five-step analysis, the ALJ concluded that Plaintiff has not engaged in substantial work activity since the alleged onset date of disability, and therefore the analysis can continue.  The ALJ then concluded, under step two, that Plaintiff does have a severe impairment. In step three the ALJ determined that Plaintiff has no impairment meeting the criteria of the listed impairments, and is therefore not presumed disabled without further inquiry.  Under step four the ALJ concluded that Plaintiff is able to return to his former work, and is therefore not disabled for purposes of the Social Security Act.  The ALJ's determination regarding step four made an inquiry under step five unnecessary.

Plaintiff alleges multiple errors regarding step three and step four of the ALJ's analysis.

*A. STEP III*

Plaintiff argues that the ALJ's analysis regarding step three is flawed because the ALJ did not specifically state the impairment from the Listing of Impairments to which Plaintiff's impairment was most akin.  The ALJ did not specify why Plaintiff's impairment failed to suffice as the listed impairment.  According to Plaintiff, the ALJ's ruling is inconsistent with *Burnett v. Commissioner of Social Security* and therefore fails as a matter of law.  220 F.3d 112 (3d Cir. 2000).  While the ALJ here did make a conclusory statement similar to the deficient ruling of the *Burnett* ALJ, ALJ Meuhlig did significantly more.  *See Id.* at 119.

ALJ Meuhlig, after making his conclusory statement then examined Plaintiff's relevant ailments demonstrating, without specifically stating, that Plaintiff's impairment did not approximate the most relevant impairment, section 1.03.[5] 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A.  The determinations of the ALJ are to be reviewed based on the totality of the evidence, and the totality of the evidence suggests that Plaintiff did not meet his burden of production with regard to step three, and that the ALJ properly rejected Plaintiff's impairment as

---

[5] Defendant correctly likens Plaintiff's impairment to section 1.03 due to Plaintiff's hip replacement surgery and correctly indicates that there was no evidence presented by Plaintiff that would allow for a finding consistent with 1.03.  The section allows for disability where "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively . . . and return to effective ambulation did not occur . . . within 12 months of onset" is present.  Nothing in the record shows Plaintiff could not walk or stand for at least twelve months between his first hip replacement in July of 1978 and his lapse of coverage on December 31, 1988.  While Plaintiff may have some significant difficulties walking today that alone does not establish such a disability during the period in question.  Plaintiff's claim that 1.02 applies is not on point because the language in 1.02 suggests an impairment or deformity that has not been addressed through surgery.  *Compare* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, §1.02 *with* § 1.03.

8

not being sufficient.  The ALJ's failure to specifically list an analogous impairment is not reason enough to remand in light of the ALJ's consideration of the totality of the evidence.  *See Jones v. Barnhardt* 364 F.3d 501, 505 (3d Cir. 2004) (*Burnett* requires "suffcent development of the record and explanation of findings to permit meaningful review."), *Kish v. Massani*, 2001 U.S. Dist. LEXIS 17003, at *31 (E.D. Pa. 2001) (holding that an ALJ's failure to state specifically an impairment is not grounds for remand when Plaintiff has failed to produce sufficient evidence and the ALJ's decision reflects such a failure.); *accord Sentyz v. Barnhart*, Civil No. 03-1504, 2003 WL 22956015, at *2 (3d Cir. Nov. 13, 2003).

Plaintiff further argues that the ALJ improperly substituted his own personal medical judgments for those of the Plaintiff's doctor, Dr. Gutkin.  Specifically, Plaintiff objects to the ALJ's comment that the need for a second hip surgery was based on normal wear and tear and not on the alleged disability.  Plaintiff is correct insofar as he argues that, as a general matter, an ALJ cannot substitute his or her own medical views for those of a treating physician.  *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000).

Here, however, Plaintiff has not offered medical evidence connecting the second hip replacement to a showing of disability during the time in question.  Even if it could be assumed that Plaintiff did provide some medical evidence connecting the second hip replacement and disability, the ALJ is not compelled to follow the treating physician's conclusions where there is substantial contrary evidence.  *See* 20 C.F.R. § 416.927(d)(2).  The ALJ had substantial contrary evidence provided by Plaintiff's own contemporaneous medical reports[6] and the reports of the

---

[6] There was no evidence in either Plaintiff's medical reports from Ecuador or from the United States that between July of 1983 and December 31, 1988 he would need a second hip replacement or he was disabled because of the alleged pain in his right leg.  At most there was evidence that Plaintiff was in some intermittent discomfort during this time.

state medical consultants allowing for a rejection of a claimed relationship between the second hip replacement and the alleged disability.

Therefore, it was proper for the ALJ to rely on the contrary evidence and his reliance did not amount to an improper medical conclusion. *See Drejka v. Commissioner of Social Security*, 61 Fed. Appx. 778, 782 (3d Cir. 2003) (If rejection is based on more than observations and credibility assessments and is supported by substantial evidence it will be deemed proper.).

Plaintiff also attacks the ALJ's ruling for failing to consider the potential side effects of prescribed medications.  Plaintiff, during the time in question was on multiple prescribed substances.[7]  Plaintiff relies on *Schaudeck v. Commissioner of Social Security* to allege that the ALJ's determination was in error. 181 F.3d 429 (3d Cir. 1999).  Plaintiff's reliance is misplaced. Plaintiff has produced no evidence demonstrating that he has in fact suffered from the side effects of his medication.  When Plaintiff was required to list the medications he was taking he was also asked if he had suffered any side effects and Plaintiff's response to the queries was either to leave the space blank or signal that he experienced no side effects.  Accordingly, Plaintiff has not met his burden with regard to this claim and has not developed a proper basis for remand.[8]  *See Id.* at 434 (remand proper because plaintiff produced evidence she suffered "severe" side effects).

---

[7] According to Plaintiff's medical history between 1983 and 1988 he was prescribed Inderal (for elevated blood pressure), Imuran (to help prevent rejection of his transplanted liver), Percocet (pain medication), and Prednisone (allergy medication).

[8] Additionally, it does not appear that Plaintiff claimed the side effects as related to his alleged disability at the time of the hearing before the ALJ.  The earliest reference to consideration of the side effects is in Plaintiff's attorney's letter to the Appeals Council and then in Plaintiff's trial brief.  In both instances Plaintiff did not produce any evidence that he actually suffered from the side effects.

*B. STEP IV*

The ALJ, in considering step four, compared the requirements of Plaintiff's job with the evaluation of the State Agency medical consultants as to what type of work Plaintiff could perform. Plaintiff's job, by his own description, had him sitting for six hours a day, walking for two hours per day and standing for one hour a day. The state's evaluation concluded that Plaintiff was capable of such activity. According to the report, Plaintiff was able to stand and/or walk for two hours of an eight hour work day and sit about six hours in an eight hour work day.

In reaching his determination the ALJ afforded little weight to Plaintiff's treating physician, Dr. Gutkin. The ALJ rejected Dr. Gutkin's conclusion that Plaintiff was "completely and totally disabled for any employment" because defining disability is reserved to the Commissioner and there is no basis for concluding that Dr. Gutkin has any expertise in deciding what employment Plaintiff is or is not capable of performing. *See* 20 C.F.R. § 404.1527(e)(2) ("the final responsibility for determining these issues is reserved to the Commissioner").

Plaintiff contends that the ALJ improperly ignored Plaintiff's claims of significant pain that inhibited his ability to work more than manifest by the objective evidence. It is Plaintiff's burden to demonstrate that his pain restricts his ability to work more than the objective evidence suggests. *See* 20 C.F.R. 404.1529(c)(3). Plaintiff can attempt to demonstrate such greater restriction through a variety of means.[9] It is the ALJ's task, however, "to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." *Brown v. Schweiker*, 562

---

[9] Including "what may precipitate or aggravate [plaintiff's] symptoms, what medications, treatments or other methods [plaintiff] use[s] to alleviate them, and how the symptoms may affect [plaintiff's] pattern of daily living." 20 C.F.R. 404.1529(c)(3)

11

F. Supp. 284, 287 (E.D. Pa. 1983) (quoting, *Bolton v. Secretary of HHS*, 504 F. Supp. 288 (E.D. N.Y. 1980))**.**  Here the ALJ clearly stated his reason for not giving credibility to Plaintiff's claim and his evaluation was supported by Plaintiff's medical history.[10]  The ALJ, therefore, had substantial evidence supporting his conclusion and this Court must therefore uphold his decision.

Plaintiff also contends that the ALJ failed to recognize the impact his impaired eyesight had on his ability to continue with his work.  There is substantial evidence however that while Plaintiff's eyesight may have been impaired it did not rise to the level of a disability.  While there were notations on Plaintiff's Ecuadorian medical records regarding diminished vision there was no evidence that Plaintiff's condition was such that he needed, or even sought, treatment.  The ALJ relied on this substantial evidence in determining that the claimed sight impairment did not, between 1983 and 1988, place Plaintiff under a disability.[11]

Plaintiff also maintains that because his doctor diagnosed him with "severe hypertensive retinopathy" dating back to the mid 1970's and stated since he could perform no work which required "close focus" he could not perform his past work.  However these diagnoses by the

---

[10] Plaintiff's medical history included only infrequent medical visits during the time in question and those visits do not show treatment for the claimed pain in Plaintiff's right leg or for his sight problems.  Additionally, as noted in Defendant's brief, treatment notes from June of 1985 contain instructions from Plaintiff's doctor for Plaintiff to take brisk, thirty-minute walks five days a week.  A year later the same doctor's note indicate that Plaintiff had no bone pain.

[11] Beyond the lack of treatment for the eyesight problems claimed by the Plaintiff, the ALJ also relied on the State medical consultants review which showed no visual impairments. Plaintiff's Functional Capacity Assessment done in July of 2002 includes a section that considers a host of possible visual limitations (near acuity, far acuity, depth perception, accommodation, color vision, and field of vision) relevant to Plaintiff's ability to perform his job.  The consultants determined that Plaintiff had no limitation on his vision and therefore his claimed vision problems could not corroborate a finding of disability.  The ALJ, in considering all relevant medical evidence, can and did rely on this medical assessment in determining Plaintiff's residual functional capacity.

doctor were not contemporaneous[12] and therefore the ALJ could, and did, reject them, instead

focusing on the substantial evidence from contemporaneous reports between 1983 to 1988 that did

not contain the diagnosis or reflect such a disability.[13]

An additional argument raised by Plaintiff is that the ALJ failed to perform a "function by

function" assessment of Plaintiff's ability to perform his past relevant work.[14]  The Plaintiff is the

primary source for information regarding his past relevant work.  *Burnett*, 220 F.3d at 123.

Plaintiff described the requirements of his job, including the time spent sitting, standing and

walking, and that he was responsible for placing and extracting diamonds from their setting.  The

ability to place and extract the diamonds was considered by the ALJ and he found that Plaintiff

could perform such activity, consistent with the determination of the State medical consultants.[15]

---

[12] Both appear in reports of Dr. Gutkin from July of 2002.

[13] Additionally, the claim by Dr. Gutkin that Plaintiff had suffered such a severe impairment since the 1970's does not seem to correspond to either Plaintiff continuing to work as a diamond setter until 1983 or the determination of the State medical consultants that Plaintiff suffered no visual limitations. *See Supra, note* 11 and accompanying text.  As mentioned above the ALJ gave little weight to Dr. Gutkin's opinion due to its conclusory nature.  The ALJ considered the claims of diminished eyesight and impairment when he stated in his ruling that Plaintiff was capable of the level of exertion required of a diamond setter and that Plaintiff "had no non-exertional limitations which narrowed the range of work he could perform."

[14] Plaintiff's related contention that the decision fails as a matter of law because Plaintiff has not worked in over fifteen years is a misreading of the applicable regulation.  20 C.F.R. § 404.1565(a) states that the agency "does not usually consider work [plaintiff] did 15 years or more before the time we are deciding whether you are disabled (*or when the disability insured status requirement was last met, if earlier*) applies."  (emphasis supplied).  Since Plaintiff was last eligible for disability insurance on December 31, 1988, less than six years from his last date of employment, the ALJ appropriately applied the regulation.

[15] Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently.  Also, Plaintiff was capable of sitting for six hours, standing and/or walking for two hours in an eight hour day, and could push or pull without limitation.  Plaintiff had no other

13

The decision of the ALJ needs only substantial evidence for support, that a different conclusion may have been reached is not a basis for remand.  *La Corte v. Bowen*, 678 F. Supp. 80, 84 (D.N.J. 1988).  Therefore since Plaintiff failed to meet his burden and the ALJ could find substantial evidence showing Plaintiff maintained his residual functional capacity regarding his prior work, the ALJ rightly ruled that Plaintiff was not disabled.  *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (plaintiff has burden to establish that he cannot perform his former work).

**V.      Conclusion**

For the reasons stated in this Opinion, the ALJ's decision is supported by substantial evidence in the record and is affirmed.  An appropriate order affirming the decision will issue.

_____

_____

                                                 s/ Faith S. Hochberg
_____Hon. Faith S. Hochberg, U.S.D.J.

_____

limitations relevant to the work requirements that he described.